UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARY P. DORSEY, Individually and as Administrator of the Estate of James Dorsey,<br><br>Plaintiff,<br><br>v.<br><br>PFIZER, INC., WARNER LAMBERT COMPANY, and PARKE-DAVIS, a division of Warner-Lambert Company,<br><br>Defendants. | Civil Action No. 05-10639-REK |

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR TRANSFER

Plaintiff, Mary Dorsey, Individually and as Administrator of the Estate of James Dorsey ("Ms. Dorsey"), and defendants, Pfizer Inc., Warner-Lambert Company, and Parke-Davis, a division of Warner-Lambert Company (together, "Defendants"), submit this memorandum in support of their joint motion to transfer this action to Judge Saris.

### BACKGROUND

**The MDL**

1. In mid-2004, dozens of cases were pending against Defendants, in numerous courts across the country, all involving claims based on an alleged marketing program involving the prescription drug Neurontin.

2. The plaintiffs in these cases alleged that Defendants had persuaded doctors to prescribe Neurontin for off-label uses through misrepresentations concerning the suitability of Neurontin for such uses.

3. Various theories of liability were alleged, but every complaint had as its core a litany of factual allegations derived from the complaint in <u>United States ex rel. Franklin v. Parke-Davis</u>, Civil Action No. 96-11651-PBS, a <u>qui tam</u> action over which Judge Saris presided from 1996 to earlier this year.

4. In June 2004, the plaintiffs in a number of the cases moved the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to 28 U.S.C. § 1407 to transfer the federal cases to a single district for coordinated or consolidated pretrial proceedings.

5. The JPML gave the matter the title <u>In re Neurontin Sales and Marketing Litigation</u>, MDL No. 1629 (the "MDL").

6. On October 26, 2004, the JPML granted the motions, transferring 27 actions (from 16 districts) to this Court and assigning them to Judge Saris. (Since then, many more cases have been transferred to the MDL.)

7. The JPML explained that the cases all "involv[ed] allegations that common defendants have engaged in the illegal promotion and sale of the drug Neurontin for 'off-label' use . . . [and that] [c]entralization . . . is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings . . ., and conserve the resources of the parties, their counsel and the judiciary."

8. All of the initially-transferred cases are so-called "Marketing Cases," in which the plaintiffs seek purely economic damages based on allegations that they purchased or paid for Neurontin for a use for which it was not suitable.

9. Judge Saris held a number of case management conferences and issued a series of case management orders that dictate the procedures and schedule applicable to the MDL.

10. Pursuant to the first case management order, a First Coordinated Amended Complaint by multiple insurers and an Amended Class Action Complaint on behalf of putative classes of individuals and third-party payors, including insurers, were filed on February 1, 2005.

11. Distilled to their essence, the two complaints allege that Defendants created and implemented a fraudulent marketing and sales scheme to boost the sales of Neurontin.

12. In April of this year, the JPML renamed this case <u>In re Neurontin Marketing, Sales Practices and Products Liability Litigation</u> and began to transfer to Judge Saris cases in which the plaintiffs allege that they sustained personal injuries as a result of the alleged off-label promotion of Neurontin.

13. While these cases (the "Personal Injury Cases") present issues that are not presented by the Marketing Cases, they also put in issue the same "allegations that common defendants have engaged in the illegal promotion and sale of the drug Neurontin for 'off-label' use . . . .'"

14. Magistrate Judge Sorokin, to whom Judge Saris has referred certain matters in the MDL, has entered a fourth case management order that provides that the prior case management orders in the MDL largely apply to the Personal Injury Cases. In addition, he has appointed a Steering Committee for the Personal Injury Cases, giving the members substantial

responsibilities for coordinating and focusing efforts. Furthermore, he has directed, via the fourth case management order, that Plaintiffs, through their respective steering committees, are to coordinate prosecution of the matters so as to avoid undue waste of time, duplication of effort, and undue expense.

15.     The MDL is proceeding on a coordinated basis. Defendants have moved to dismiss the two complaints referenced above. The motions were argued in July and are <u>sub judice</u>. In addition, substantial discovery has been conducted, and a motion for a protective order is pending, the outcome of which will dictate the scope of discovery.

**Ms. Dorsey's Complaint**

16.     Ms. Dorsey's case, which was filed on April 1, 2005, is based on the same allegation that, as the JPML described it, Defendants "have engaged in the illegal promotion and sale of the drug Neurontin for 'off-label use . . ..'"

17.     Indeed, in the introduction to her complaint, Ms. Dorsey alleges that she is one "of many victims" of a "scam undertaken by" Defendants. The "scam" she goes on to describe is the same alleged marketing program that is at issue in the MDL pending before Judge Saris.

18.     Ms. Dorsey's case has not progressed beyond the pleading stage. An initial conference has not been held. No other motions are pending.

4

## ARGUMENT

19.  Local Rule 40.1(I) provides, in relevant part:

In the interest of justice or to further the efficient performance of the business of the court, a judge . . ., with respect to civil cases only, may transfer the case to another judge, if the other judge consents to the transfer.

20.  Transfer of this action to Judge Saris (and Magistrate Judge Sorokin) will be in the interest of justice and will further the efficient performance of the business of the Court.

21.  Transfer will be in the interest of justice because it will permit Ms. Dorsey's claims to proceed more quickly, at lower cost, and before a judge who has extensive experience with the factual underpinnings of the case and with the applicable procedural context.

22.  Transfer will further efficient performance of the business of the Court because it will result in the case proceeding as part of a single efficient and coordinated proceeding. If the case were not transferred, two matters involving the same core factual allegations would exist, and duplication of effort by the parties and the Court would result. The parties and this Court would have to engage in pre-trial activities in this case – including voluntary disclosures, discovery, and motion practice – that would duplicate efforts that are underway in the MDL. Further, were this case to proceed in parallel with the MDL, inconsistent rulings could result.

## CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court transfer this action to Judge Saris.

| | |
|---|---|
| MARY A. DORSEY, Individually and as Administrator of the Estate of James Dorsey, | PFIZER INC., et al., |
| By her Attorneys, | By their attorneys, |
| s/Timothy J. Perry<br>Timothy J. Perry<br>BBO No. 631397<br>PRETI FLAHERTY LLP<br>10 High Street, Suite 502<br>Boston, MA 02110 | s/James P. Rouhandeh<br>James P. Rouhandeh<br>James E. Murray<br>Deborah L. MacGregor<br>DAVIS POLK & WARDWELL<br>450 Lexington Avenue<br>New York, New York 10017<br>(212) 450-4000 |
| | -and- |
| | s/David B.Chaffin<br>David B. Chaffin<br>BBO No. 549245<br>HARE & CHAFFIN<br>160 Federal Street<br>Boston, Massachusetts 02110<br>(617) 330-5000 |

Dated: October 18, 2005